■ In the Matter of BETTY LEHMAN, Appellant, v BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK et al., Respondents. — In a proceeding pursuant to CPLR article 78, *inter alia,* to (1) compel the respondents to reinstate petitioner as a special education teacher, and (2) expunge an "unsatisfactory" rating from her employment record, petitioner appeals from a judgment of the Supreme Court, Kings County (Bernstein, J.), dated April 11, 1980, which granted the respondents' cross motion to dismiss the petition. Judgment modified, by deleting therefrom everything after the word "dismissed" and substituting therefor the following: "only as to the request that an unsatisfactory rating be expunged from the petitioner's employment record and respondents' cross motion is granted to that extent. It is determined that the petitioner still holds a valid teaching license." As so modified, judgment affirmed, without costs or disbursements, and matter

remanded to the respondents for a new determination in accordance herewith. Petitioner, a licensed probationary special education teacher in the employ of the respondent board of education, became eligible for tenure on February 1, 1978. Prior to the completion of her probationary term, her principal prepared a report of her probationary service and recommended that her employment be discontinued. This report was forwarded to the community superintendent, who approved the recommendation. Thereafter, by letter dated January 25, 1978, the petitioner was informed by the Director of the Bronx Regional Office for Special Education that her employment was being discontinued. After a review proceeding conducted pursuant to the respondent board's by-laws, the respondent chancellor notified the petitioner that he concurred with the recommendation that her services be discontinued. This proceeding then ensued. At the outset we note that the chancellor is empowered to promulgate such rules and regulations as he may determine are necessary or convenient (see Education Law, § 2590-h, subd 16; By-laws of the Board of Education of the City of New York, § 1.8). Pursuant to that grant of authority, the chancellor promulgated Special Circular No. 65 on March 31, 1976, which provided that its purpose was to "clarify the administrative and supervisory roles of both district and bureau personnel". Section 3.3 of the circular provides: "3.3 *Probation and Tenure* Teachers of special education classes are appointed to schools/community school district with the notation 'Division of Special Education and Pupil Personnel Services' imprinted on the appointment notice. The final recommendation on whether or not a probationary teacher will be continued in service or granted tenure shall be made by the Executive Director of DSEPPS and is subject to automatic review under Section 105a of the By-laws. When a teacher is assigned full time to a school, the principal shall prepare the 'Report on Probationary Service' (OP-11) in consultation with the appropriate bureau and forward his recommendation to the Community Superintendent who shall forward the recommendation to the Executive Director of DSEPPS. Where the Bureau Director is the rating officer, the Director will prepare the OP-11. When a teacher of special education classes satisfactorily completes the probationary period he/she shall be granted tenure in DSEPPS." At bar, it is alleged that the final recommendation on whether or not petitioner's probationary services would be continued was not made by the executive director of the Division of Special Education and Pupil Personnel Services (DSEPPS). We reject the respondents' argument that Special Circular No. 65 was simply a "housekeeping measure clarifying the general lines of supervisory authority over special education teachers". Although the term "rule or regulation" has not been the subject of precise definition (see, generally, 2 Davis, Administrative Law Treatise [2d ed], §§ 7:1, 7:4), it has been said that the term embraces "any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future" *(People v Cull,* 10 NY2d 123, 126). Applying this definition to the circular promulgated by the chancellor, it becomes apparent that it falls within the ambit of the term "rule or regulation". The circular appears to be a quasi-legislative prescription which establishes a course of conduct for the future, viz., the manner in which a decision is to be made with regard to either the retention or termination of service of a probationary special education teacher. As such, it is binding upon the respondents (cf. *Andino v Board of Educ.,* NYLJ, Sept. 9, 1980, p 12, col 6). This court has repeatedly held that the by-laws of the board are binding upon it (see *Matter of Jacobs v Board of Educ.,* 73 AD2d 623; *Matter of Parris v Board of Educ.,* 48 AD2d 835, mot for lv to app den 37 NY2d 312; *Matter of Brown v Board of Educ.,* 42 AD2d 702, mot for lv to app den 34 NY2d 519), and the same principle must apply to regulations promulgated by the chancellor. This is in

accord with the fundamental administrative law principle that an agency's rules and regulations promulgated pursuant to statutory authority are binding upon it as well as the individuals affected by the rule or regulation (see *People ex rel. Doscher v Sisson,* 222 NY 387, 393-394; *People ex rel. Jordan v Martin,* 152 NY 311; *Matter of Conlon v McCoy,* 27 AD2d 280, mod on other grounds 22 NY2d 356). A corollary of this principle is that rules of an administrative agency which regulate procedure affecting substantial rights of individuals may not be waived by the agency (see *People ex rel. Jordan v Martin, supra; Matter of Lake Placid Club v Abrams,* 6 AD2d 469, affd 6 NY2d 857). Petitioner's right to be evaluated by the Executive Director of the DSEPPS is a substantial right. As the final recommendation is to be made by the Executive Director of the DSEPPS, it undoubtedly is a weighty factor to be considered by the chancellor in making the ultimate determination as to whether petitioner's services are to be continued. Therefore, petitioner is entitled to be evaluated in accordance with the provisions of Special Circular No. 65, whereupon the chancellor shall make a new determination. We reject petitioner's argument that she was not examined in accordance with what formerly was section 41 (subd 3, par [e]), of the by-laws of the Board of Education of the City of New York (see *Matter of Baylis v Board of Educ.,* 80 AD2d 610). Moreover, it appears that the respondents sufficiently complied with the by-law provisions governing the conduct of review proceedings. In view of the fact that we are remitting this matter to the respondents, we need not reach the question of the effect of the board's failure to comply with the notice requirements of section 2573 (subd 1, par [a]) of the Education Law. However, we note that in the event it is ultimately determined that the petitioner's services are to be discontinued, then she would be entitled to one day's pay for each day that the notice was late (see *Matter of Zunic v Nyquist,* 48 AD2d 378, affd 40 NY2d 962). Lastly, we note that the letter dated January 25, 1978, by which the petitioner was informed that her employment was being discontinued, also provided that her teaching license was to be discontinued. Respondents candidly concede that this statement was erroneous. A board of education may not terminate a teaching license without first holding a hearing at which proper procedural safeguards are employed (see *Matter of Baronat,* 11 Educ Dept Rep 150). Therefore, petitioner still holds a valid teaching license. Hopkins, J.P., Titone, Lazer and Cohalan, JJ., concur.