OPINION OF THE COURT
Dianne T. Renwick, J.
Petitioner, sister of former tenant of record, seeks succession rights in a public housing apartment. When the tenant of record moved, petitioner requested to be deemed a “remaining family member” and succeed to the tenancy of her sister’s apartment. The New York City Housing Authority (NYCHA) denied the application, as she was not part of the original family and management had not approved, her as a permanent household member. In this CPLR article 78 proceeding challenging this administrative determination by respondent, the issue that must be resolved is whether this court should sustain a denial of succession rights based on a summary denial of a permanent residency request in direct contravention of NYCHA’s own rules.
Background
The facts, as gathered from petitioner’s pleading and respondent’s answer, are not largely in dispute.[1] Mary Ashley was the tenant of record of the apartment where petitioner Marcella Mays-Watt currently resides. The apartment is located in the Soundview Houses, a public housing complex owned and operated by NYCHA. In early 1998, Ms. Mays-Watt moved into her sister’s apartment at the request of her sister, who was sick with an unreported illness. A few months later on July 31, 1998, the tenant of record, Ms. Ashley, sought written permission for inclusion of her sister as part of the *58 household on a permanent basis. A week later, the assistant manager of the housing complex denied the request because of an administrative proceeding pending against the tenant of record seeking termination of her tenancy. Reportedly, the termination of tenancy proceeding stemmed from “nondesirability” allegations that the tenant of record’s son had “marked graffiti on project property.”
At the time of the denial of the permanent residency application, the termination of tenancy proceeding had been scheduled for a hearing for NYCHA to substantiate its allegations. Subsequently, the hearing was adjourned on many occasions because of NYCHA’s inability to procure witnesses. Meanwhile, petitioner Mays-Watt continued living with the tenant of record, her sister, with the knowledge and acquiescence of NYCHA. On or about January 1999, the tenant of record, Ms. Ashley, underwent emergency surgery during a visit with relatives in Rhode Island. As advised by her doctor, the tenant of record remained in Rhode Island indefinitely for “follow-up care.”
Finally, in or about November 1999, NYCHA withdrew the “nondesirability” charges presumably because of its inability to procure witnesses to the incident in question. By that time, Ms. Ashley had decided to remain in Rhode Island permanently. She, however, did not formally relinquish her rights to the subject apartment until January 2002. After her sister’s surrender, Ms. Mays-Watt requested that NYCHA grant her succession rights to the apartment as a remaining family member. On July 9, 2002, the complex’s property manager denied her request on the ground that “Ms. Watt was never given permission or was originally a family member.” Petitioner then filed a remaining family grievance, which on August 2, 2002, NYCHA denied on the ground that “Ms. Mays-Watt was never a part of the original family nor was permission requested by Ms. Ashley for Marcella Mays-Watt to join her household.”
Subsequently, Ms. Mays-Watt instituted this article 78 proceeding for review of NYCHA’s determination denying her succession rights to her sister’s former apartment. Meanwhile, after serving petitioner a notice to quit, NYCHA instituted a holdover proceeding in housing court, seeking petitioner’s eviction. Such holdover proceeding has been held in abeyance pending the outcome of this article 78 proceeding.
*59 Discussion
The role of a court in its examination of an administrative decision, pursuant to CPLR article 78, is a limited one. The function of judicial review in an article 78 proceeding is not to weigh the facts and merits de novo and substitute the court’s judgment for that of the agency’s determination. (Greystone Mgt. Corp. v Conciliation & Appeals Bd., 94 AD2d 614, 616 [1st Dept 1983], affd 62 NY2d 763 [1984].) Rather, the standard of review in an article 78 proceeding is whether an administrative determination is arbitrary or capricious, without a rational basis in the administrative record. (Id.; see also, Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974].)
Respondent, NYCHA, opposes this article 78 application, seeking to overturn its determination that petitioner has no succession rights to her sister’s apartment. NYCHA’s position is that such determination was appropriate because petitioner was not an original member of the tenant of record’s household, nor was she ever granted written permission to join her sister’s household. As an exception to the usual procedure of selecting tenants from a long waiting list, NYCHA’s guidelines permit a qualified “remaining family member” of a tenant of record’s household to succeed to a tenant’s apartment after the tenant of record either moves or dies, provided the person meets the following criteria: NYCHA’s own regulation defines a “remaining family member” as a person who (a) has moved into the apartment lawfully (1) as a member of the original family composition or (2) by birth or adoption subsequently moved in or (3) with written permission of project management; (b) has remained in the apartment continuously; and (c) is otherwise eligible for public housing in accordance with the standards for admission for applicants in the housing applicant’s manual. (See NYCHA Management Manual, ch VII, § E [1] [a].)
In this case, petitioner Mays-Watt was not a member of the original family composition; nor did she, by birth or adoption, subsequently move into the apartment. Nor has she ever been granted written permission to permanently join the household. On these facts alone, an article 78 proceeding would have to be dismissed in that there would appear to be a rational basis for the decision by NYCHA, pursuant to the agency’s guidelines regarding succession rights. This conclusion, however, would assume that NYCHA’s 1998 refusal to grant the tenant of record written permission to add petitioner as a permanent household member was appropriate. Petitioner, however, argues that the denial of the 1998 application for permanent *60 residency was arbitrary since it was not on the merits, but based solely on the pendency of the “nondesirability” charges that were later dismissed. Thus, petitioner’s succession rights, if any, to her sister’s apartment depend on whether the summary denial of the 1998 application to join the household has a rational basis.
A. Summary Denial of Permanent Residency Request Contravenes NYCHA’s Own Rules and Regulations
This court finds that NYCHA violated its own regulations when it summarily denied the tenant of record’s application for inclusion of petitioner as a permanent household member. A review of the pertinent agency guidelines reveals that NYCHA explicitly prohibits summary denials of permanent residency requests because of pendency of “nondesirability” charges against a tenant of record. Specifically, NYCHA Management Manual, chapter IV, subdivision IV (Occupancy; Changes in Family Composition) provides for a 90-day review period of a permanent residency request. If anytime before the review expires, the tenant or proposed additional household member “commits an act or omission that casts doubt on their desirability” as a tenant, “the review period shall be automatically suspended, and shall not expire until the question of desirability is resolved.” {Id. § F [4].) At the conclusion of the review period, the management shall grant or deny in writing permanent residency status. {Id. § F [6].) “If no determination is made at the end of this period, the application must be deemed granted.” {Id.)
Accordingly, the pertinent NYCHA guidelines clearly spell out the appropriate course of action to take when an application for permanent residency is made and “undesirability” charges are pending against the tenant of record or proposed additional household member. In such situation, the agency must suspend the determination of the application until the nondesirability charges are resolved. Thus, by summarily denying the permanent residency request before the nondesirability charges were resolved in the tenant’s favor, NYCHA circumvented its own rules. Under the circumstances, the question becomes whether NYCHA’s shirking of its own rule mandates annulling its determination that petitioner has no succession rights to her sister’s former apartment.
Where the Housing Authority fails to follow its own procedure in terminating a public housing tenancy, the termination must be annulled. (Matter of Brown v Popolizio, 166 AD2d 44 [1st Dept 1991], citing Garner v Tuckahoe Hous. Auth., 81 *61 AD2d 915 [2d Dept 1981].) For instance, in Robinson v Finkel (194 Misc 2d 55 [Sup Ct 2002]), the termination of a public housing tenancy was annulled because the agency failed to follow its own rules by failing to investigate and consult with the tenants before formally seeking to terminate their tenancy. The same result was mandated for failure to follow required preliminary procedure in cases involving other administrative settings where substantial rights are affected. (See e.g., Benjamin v McGowan, 275 AD2d 290 [1st Dept 2000]; Allen v Blum, 85 AD2d 228 [1st Dept 1982] [administrative determination reducing petitioner’s public assistance annulled when rendered in violation of agency’s own rules]; Adams v Franco, NYLJ, Jan. 31, 1996, at 26, col 1 [Sup Ct, NY County] [administrative determination denying section 8 rent subsidy annulled when rendered in violation of agency’s own rules]; see also, Matter of Lehman v Board of Educ., 82 AD2d 832 [2d Dept 1981].)
It cannot be seriously disputed that a substantial right is affected in this case dealing with succession rights. Petitioner has remained at the subject premises for three years with the acquiescence of NYCHA, which now wishes to evict her. Loss of possessory interest in one’s home is a severe penalty which affords an individual a cause of action. (United States v Premises Known as 281 Syosset Woodbury Rd., 791 F Supp 61, 62-63 [ED NY 1992]; see also, Corchado v Popolizio, 171 AD2d 598 [1st Dept 1991].) A remaining family member’s succession rights are recognized for that reason. (Robinson v Finkel, supra, 194 Misc 2d 55.) Indeed, federal regulations promulgated by the Department of Housing and Urban Development and NYCHA rules, enacted pursuant to those same federal regulations, recognize succession rights and mandate that legitimately remaining heads of households are entitled to succession rights. (See 24 CFR 960.204 [a]; NYCHA Management Manual, ch VII, § E [1] [b] [3].)[2] Properly promulgated substantive agency regulations have also the force and effect of law. (Doe v Syracuse School Dist., 508 F Supp 333, 337-338 [ND NY 1981].)
Since a significant deprivation is at stake, this court cannot ignore NYC HA’s circumvention of its own rules to deny *62 petitioner succession rights to her sister’s former apartment. (Cf. Robinson v Finkel, 194 Misc 2d 55 [Sup Ct, NY County 2002].) In fact, had NYCHA followed its own rule it would have been compelled to grant the permanent residency request. There is no reason to believe that petitioner would not have met the permanent residency criteria. Indeed, the only basis for the denial was the pending charge that was later dismissed. Neither at the time of the permanent residency application nor at the time of the succession rights request did NYCHA claim that petitioner failed to meet the requirements for permanent residency, as she undisputedly remained in the apartment continuously and was otherwise eligible for public housing.
B. Summary Denial of Permanent Residency Request Contravenes Due Process
While the violation of NYCHA’s own rules is a sufficient basis for annulling the Housing Authority’s administrative determination, it is not the only basis for that result. This court also finds that the summary denial of the permanent residency application does not satisfy petitioner’s due process rights as a prospective public housing tenant. Due process requires that a municipal agency such as the New York City Housing Authority utilize “ascertainable standards” in selecting tenants. (Holmes v New York City Hous. Auth., 398 F2d 262, 265 [2d Cir 1968].) Strict application of this standard comports with the basic requirements of due process set forth by the United States Supreme Court in Goldberg v Kelly (397 US 254, 262-263 [1970]), where the Court stated that “[the] extent to which procedural due process must be afforded the recipient is influenced by the extent to which he [or she] may be ‘condemned to suffer grievous loss.’ ” The loss here, particularly in light of the dramatic loss of affordable public housing to the City, is significant.
By permitting summary denial of a permanent residency request based on the pendency of nondesirability charges, the Housing Authority has replaced a procedural requirement, purportedly designed to provide substantive limitations on the power to deny a permanent residency application, with a process that is devoid of any procedural safeguards, circumvents substantive limitations and is not subject to judicial review. The obvious purpose of NYCHA’s rule of conditionally deferring a permanent residency application until the resolution of a nondesirability charge is fairness; it provides a procedural safeguard of guaranteeing that the merits of the application are addressed if the nondesirability charges are not sustained. *63 However, by summarily denying a permanent residency application based solely on the pendency of nondesirability charges, irrespective of its ultimate outcome, the Housing Authority jettisons its burden of establishing nondesirability charges as a basis for the denial of the application. Similarly, a summary denial obviates NYCHA’s responsibility to address the merits of the permanent residency application in the event the nondesirability charges are not sustained. Obviously, a summary determination without consideration of the merits of the application is a process devoid of the facts necessary for administrative and judicial review.[3] Under the circumstances, the summary denial of the application is, therefore, inconsistent with due process of law required before a private citizen is deprived of his putative tenancy. (Cf. Robinson v Finkel, supra, 194 Misc 2d 55 [2002] [attempt to evict tenants based on non-desirability charges violated due process where determination devoid, inter alia, of an evidentiary hearing on the record, and tenant deprived of an opportunity to confront and cross-examine, and otherwise be informed of the evidence, before an impartial hearing officer]; Sumpter v New York City Hous. Auth., NYLJ, Mar. 4, 1998, at 25, col 5 [Sup Ct, NY County] [termination of public housing tenancy vacated on due process grounds where decision rendered on default, and tenant unreasonably denied opportunity to be heard on the merits].)
To be sure, the court recognizes that NYCHA has broad discretion to restrict the occupancy of its apartments, to secure the safety of its tenants and to prevent prospective tenants from improperly circumventing the agency’s lengthy waiting list for a scarce pool of apartments that become available every year. Under the particular circumstances of this case, however, NYCHA’s summary denial of the tenant of record’s application to include petitioner as a permanent household member, based on pending “nondesirability” charges that were later dropped, is so shocking to basic notions of fairness to constitute an abuse of discretion. A contrary result would insulate NYCHA’s determination and reward the agency for its failure to abide by its substantive rule — that a denial of a permanent residency request based upon pending nondesirability charges is meant to be a conditional deference of the application and not a final *64 determination on the merits. (Cf. Matter of Mott v Division of Hous. & Community Renewal, 147 AD2d 571 [2d Dept 1989].)
C. Statute of Limitations Did Not Commence Until Denial of Application for Succession Rights
Respondent, NYCHA, avers a statute of limitations defense, pursuant to CPLR 217, to petitioner’s challenge to the validity of the 1998 application for permanent residency. According to respondent, the tenant of record was required to seek relief from that determination within four months of the denial of the permanent residency application in 1998. While apparently logical, this argument does not bear close scrutiny.
A CPLR article 78 proceeding against a public “body or officer must be commenced within four months after the determination to be reviewed becomes final and binding.” (CPLR 217 [1]; see also, Lewis v New York City Hous. Auth., 262 AD2d 16 [1st Dept 1999]; Matter of Mott v Division of Hous. & Community Renewed, 147 AD2d 571 [2d Dept 1989].) An agency determination is final — triggering the statute of limitations— when the petitioner is aggrieved by the determination. (See, Matter of Biondo v New York State Bd. of Parole, 60 NY2d 832, 834 [1983]; Matter of Martin v Ronan, 44 NY2d 374, 380-381 [1978].) A petitioner is aggrieved once the agency has issued an “unambiguously final decision that puts the petitioner on notice that all administrative appeals have been exhausted.” (Matter of Mateo v Board of Educ. of City of N.Y., 285 AD2d 552 [2d Dept 2001] [internal quotation marks omitted], citing Carter v State of New York, 95 NY2d 267, 270 [2000].) Conversely, the limitations period does not commence where the agency has created the impression that the determination, albeit issued, was intended to be nonconclusive. (See, Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352, 358 [1978].) If an agency has created ambiguity or uncertainty as to whether a final and binding decision has been issued, “ ‘the courts should resolve any ambiguity created by the public body against it in order to reach a determination on the merits and not deny a party his day in court.’ ” (Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352, 358 [1978], quoting Matter of Castaways Motel v Schuyler, 24 NY2d 120, 126-127 [1969]; see also, Matter of 80 E. 116th St. Corp. v City of N.Y. Dept. of Hous. Preserv. & Dev., 245 AD2d 107 [1st Dept 1997].)
Applying these principles to the facts of this case, this court finds that a summary denial of a permanent residency application, based on the pendency of nondesirability charges against the tenant of record, cannot be considered a final and binding *65 determination within the context of CPLR 217. Indeed, as noted above, NYCHA’s own regulations consider such a denial a conditional deference of the merits of the application until the final resolution of the underlying nondesirability charges. Moreover, while the officer who rendered the decision may have considered it final and binding, the officer never informed either the tenant of record or petitioner that such determination was not subject to any further review even if the nondesirability charges were never sustained. The ambiguous effect of the determination was rendered even more tentative and uncertain by NYCHA’s own inaction. For instance, even after 1998 NYCHA permitted petitioner, Ms. Mays-Watt, to reside at her sister’s apartment for almost three years, even though the agency’s guidelines provided that if the authority denies a permanent residency application, the agency “shall commence termination of tenancy proceedings for the unauthorized occupancy” if the proposed additional tenant remains in the apartment. (See NYCHA Management Manual, ch IV, subd IV, § F [5] [Occupancy; Changes in Family Composition].)
In short, since Ms. Mays-Watt did not feel an unambiguously final impact from the 1998 administrative decision until the 2002 denial of her application for succession rights, it is at such time that the statute of limitations began to run, making this article 78 petition timely.
Conclusion
Based on the foregoing, this court concludes that NYCHA’s determination denying petitioner succession rights to her sister’s former apartment was arbitrary and contrary to law. Specifically, NYCHA’s summary denial of the permanent residence request, based on the pending nondesirability charges that were eventually dismissed, was a contravention of its rules and due process, and thus devoid of a rational basis. Thus, this article 78 petition must be granted.
Accordingly, it is hereby ordered and adjudged that NYCHA’s determination to deny petitioner succession rights to Mary Ashley’s former apartment, as a remaining family member, is vacated as arbitrary and without a rational basis on the record; it is further ordered and adjudged that respondent, NYCHA, grant Marcella Mays-Watt a lease, as a remaining family member, as of the date of the denial of the application for succession rights.

. The court also heard oral argument, but did not conduct an evidentiary hearing. The parties did not request such a hearing in light of the largely undisputed factual allegations. Where a CPLR article 78 petition challenges an administrative determination based on undisputed facts, no substantial evidence question arises. (Matter of Duboff Elec, v Goldin, 95 AD2d 666 [1st Dept 1983]; see also 8 Weinstein-Kom-Miller, NY Civ Prac H 7804.10.)

. The Housing Authority is largely funded through the Department of Housing and Urban Development and thus must comply with the United States Housing Act, and the regulations enacted thereunder, which establish general eligibility standards. (See 42 USC § 1437 et seq.; 24 CFR 960.200 et seq.)

. In fact, even the officer who denied the remaining family grievance, the appeal of the denial of succession rights, failed to review the summary denial of the permanent residency application. The officer who denied the grievance relied on the incorrect assumption that an application for permanent residency had never been made.