Anthony SCALES, Petitioner,

v.

NEW YORK STATE DIVISION OF PAROLE and John Burge, Superintendent, Auburn Correctional Facility, Respondents.

No. 04 Civ. 6151(VM).

United States District Court,
S.D. New York.

Oct. 18, 2005.

---

Anthony Scales, Attica, NY, pro se.

### DECISION AND ORDER

MARRERO, District Judge.

*Pro se* petitioner Anthony Scales ("Scales"), an inmate at the Auburn Correctional Facility in New York ("Auburn"), filed the instant petition for a writ of habe-

as corpus pursuant to 28 U.S.C. § 2254 ("§ 2254"). Scales claims that the New York State Division of Parole (the "Division of Parole") violated his right to due process under the Fourteenth Amendment to the United States Constitution by revoking his parole without affording him an opportunity for an evidentiary hearing. The Division of Parole and respondent John Burge, Superintendent at Auburn, (collectively, "Respondents"), have filed a motion to dismiss Scales's petition on the grounds that it is procedurally barred and has no merit. For the reasons set forth below, the Court grants Respondents' motion and dismisses Scales's petition.

## I. *BACKGROUND* [1]

On January 8, 1980, while on parole supervision related to a 1976 robbery conviction, Scales was arrested for his alleged role in three armed robberies. On March 26, 1981, after a jury trial in New York State Supreme Court, Kings County, Scales was convicted of various offenses involving robbery, weapon possession, and reckless endangerment. On the basis of that conviction, Scales was sentenced to an aggregated, indeterminate term of imprisonment of from twelve and one-half to twenty-five years. Scales was released on parole on April 4, 2000.

On July 20, 2001, Administrative Law Judge Luis Meringolo ("Judge Meringolo") presided over a parole revocation hearing (the "Revocation Hearing" or the "Hearing") on charges that Scales committed four violations of the terms of his parole. Scales, represented by counsel, pleaded guilty pursuant to a plea agreement to one charge of failing to report to his parole officer. Under the terms of the plea agreement, Scales agreed to assist the New York City Police Department Gang Intelligence Unit (the "Gang Intelligence Unit") in investigating criminal activity. As a result of Scales's assistance to the Gang Intelligence Unit, he is now incarcerated in protective custody. The obligations that the Division of Parole incurred pursuant to the plea agreement are disputed and form the subject matter of Scales's petition. Scales claims that the Division of Parole promised him that if he pleaded guilty to one of the parole violation charges, he would be released from custody and restored to parole. Respondents contend that the plea agreement bound the Division of Parole following the Revocation Hearing only to recommend, rather than ensure, that Scales be restored to parole.

At the conclusion of the Hearing, Judge Meringolo issued such a recommendation. (Transcript of Parole Revocation Hearing ("Tr.") (attached as Ex. D to Morgan Decl.) at 7.) However, on August 10, 2001, Parole Board Commissioner Robert Dennison ("Commissioner Dennison") modified Judge Meringolo's "revoke and restore" recommendation and instead issued a "hold" of thirty-six months. (Parole Revocation Decision Notice (attached as Ex. B to Morgan Decl.).) Commissioner Dennison provided the following reasons for

---

1. The following factual summary derives from the parties' undisputed representations contained in the following submissions: Notice of Motion for Writ of Habeas Corpus Pursuant 28 U.S.C. § 2254 (undated); Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, dated May 10, 2004 ("Pet."); Memorandum [in Support of Petition for Writ of Habeas Corpus], dated May 10, 2004 ("Petr.'s Mem."); Respondents' Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated January 27, 2005; Declaration of Kimberly Morgan in Opposition to Petition for a Writ of Habeas Corpus, dated January 27, 2005 ("Morgan Decl."); Petitioner's Traverse in Response to Opposition of Writ of Habeas Corpus [sic], dated February 10, 2005 ("Traverse"). Except where specifically referenced, no further citation to these sources will be made.

modifying Judge Meringolo's recommendation: "Subject has an extremely lengthy and violent criminal history. He has been given numerous opportunities on parole. This is his 5th violation on this sentence." (*Id.*)

Scales first attempted to challenge his parole revocation by filing a habeas petition in state court (the "State Court") pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Article 70 on September 21, 2001. The State Court dismissed Scales's petition on the ground that Scales had not exhausted his administrative remedies.

While his state habeas petition was pending Scales, through counsel, filed an administrative appeal of the parole revocation with the Appeals Unit of the Parole Board (the "Appeals Unit"). In that appeal, Scales argued that the decision to modify his parole was arbitrary, capricious and shocking to the sense of fairness. The Appeals Unit affirmed Commissioner Dennison's decision, finding that "the time assessment imposed [was] clearly permissible." (Administrative Appeal Decision Notice, dated September 6, 2002 (attached as Ex. E to Morgan Decl.).)

The record before the Court reflects that Scales subsequently filed another state court petition, in this instance pursuant to Article 78 of the C.P.L.R. ("Article 78") in New York State Supreme Court, Albany County on January 15, 2003. In support of his Article 78 petition, Scales argued, *inter alia*, that Commissioner Dennison's modification of Judge Meringo-

lo's recommended sentence unlawfully deprived him of a liberty interest that was created by his plea agreement and constituted a breach of contract. (*See* Affidavit in Support of Order to Show Cause dated January 9, 2003 (attached as Ex. F to Morgan Decl.) ¶¶ 4, 12.) On September 15, 2003, the court dismissed Scales's petition on the grounds that it had not been filed within the four-month limitation period prescribed for actions brought pursuant to Article 78. As explained further below, there is no clear indication in the record of the instant action that Scales appealed the state court's dismissal of his Article 78 petition.

Scales filed the instant petition for habeas corpus (the "Petition") in the United States District Court, Northern District of New York[2] on May 25, 2004.[3] In the Petition, Scales claims that his plea agreement "was broken, and the sentence deal as made between the parties ... was reneged on by the Division of Parole, thereby violating the liberty interest of the petitioner." (Pet. ¶ 9.) Scales further claims that he should have been afforded the opportunity to withdraw his plea on the grounds that the Division of Parole did not honor the plea agreement. He argues that "petitioner's agreed sentence based upon a pre-determined ... plea was modified to a three year hit by the Division of Parole in direct violation of the agreed upon sentence, without prior warning, or the chance to retract his plea as required by law, and that ... petitioner is still incarcerated as a result of this violation of his right to proce-

2. Upon the order of Magistrate Judge Randolph F. Treece, Scales's habeas corpus petition was transferred to the United States District Court, Southern District of New York in accordance with 28 U.S.C. § 2241(d).

3. Respondents do not contest the timeliness of this petition for federal habeas corpus relief. Scales filed the petition within the one-year

period following the date on which the factual predicate for his claims became final, pursuant to 28 U.S.C. § 2244(d)(1)(D). The factual predicate of Scales's claims is the denial of his Article 78 motion in the State Court on September 15, 2003. Scales filed the instant petition on May 25, 2004, well within the one-year statutory period.

dural due process." (Pet. ¶ 10.) In addition, Scales claims that he did not receive timely notice of the Commissioner's modification and that the Appeals Unit's decision was improperly delayed.

## II. DISCUSSION

As a preliminary matter, the Court notes that because Scales is a *pro se* litigant, his submissions must be held "to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citation omitted), and that the Court must read his submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted).

A petitioner in custody pursuant to a state court judgment is entitled to habeas relief only if he can show that his detention violates the United States Constitution or federal law or treaties of the United States. *See* 28 U.S.C. § 2254(a). Generally, habeas corpus petitioners must exhaust the remedies available to them in state court before seeking federal relief, unless state corrective process is unavailable or the process that is available would be ineffective. *See* 28 U.S.C. § 2254(b)(1). In order to exhaust available state remedies, a habeas petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir.2003).

The doctrine of exhaustion applies to habeas petitions challenging parole revocations. *See Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003). "To exhaust a denial of parole under New York law, the inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78." *Desire v. New York State Div. of Parole*, No. 00 Civ. 5514, 2001 U.S. Dist. LEXIS 13784, *6 (S.D.N.Y. Aug. 22, 2001) (citing N.Y. Comp.Codes. R. & Regs. tit. 9, § 8006.1). If the Article 78 petition is denied, the petitioner must appeal that denial to the "highest state court capable of reviewing it." *Cotto*, 331 F.3d at 237.

Respondents do not dispute that Scales completed the first two steps necessary to challenge a parole revocation by filing an administrative appeal and an Article 78 petition. They claim, however, that Scales did not appeal the denial of his Article 78 petition and hence did not present his claims to the highest state court capable of reviewing them. Scales does not clearly claim to have filed such an appeal[4] nor has he submitted any docu-

---

4. In his Traverse in Response to the Opposition of Writ of Habeas Corpus ("Traverse"), Scales explains that, after he received notice of the denial of his Article 78 petition, he was "advised via the Legal Assistance at the Facility [where he was incarcerated] and further learned through research, that he could next take the case either in the form of Appeal, or in the form of a direct writ of either Article 78, or habeas corpus to the Appellate Div[ision] 3rd Dep[artmen]t, thus did so, in an attempt to further exhaust his immediate remedies, and received word of the denial of his application on or about the evening of December 22nd 2003 while still at Elmira's

Protective housing unit." (Traverse at 5.) An independent review of the records of the Appellate Division, Third Department reflects that on December 22, 2003 the court denied a petition Scales filed pursuant to C.P.L.R. § 7002(b)(2), which permits the filing of habeas petitions directly with the Appellate Division, and that Scales filed no other applications with that court. Thus, Scales's claim in his Traverse that he filed an application with the Appellate Division, Third Department appears to refer to a state habeas petition, rather than an appeal of the denial of his Article 78 petition. This interpretation is consistent

mentary evidence of having done so.[5] Accordingly, the record before the Court is insufficient to support a finding that Scales appealed the denial of his Article 78 petition.

■ Nevertheless, a federal court may entertain a writ of habeas corpus if: "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). "[A] federal court may theoretically find that there is an 'absence of available State corrective process' under [28 U.S.C.] § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile. In such a case the habeas court theoretically has the power to deem the claim exhausted." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir.2001).

Scales is procedurally barred under state law from filing an appeal challenging the State Court dismissal of his Article 78 petition. Under New York law, petitioners must appeal an adverse Article 78 determination within thirty days after being served with a copy of the judgment. *See* C.P.L.R. § 5513(a)-(b) (McKinney 2005).

Although the record before the Court does not indicate exactly when Scales was served with the denial of his Article 78 petition, Scales does not claim that there was any delay in serving the judgment on him and the judgment was issued on September 15, 2003. Because the limitation period for appealing the Article 78 denial has thus expired, the Court may deem Scales's claims to be exhausted.

### B. *PROCEDURAL DEFAULT*

■ Having determined that Scales's claims are not barred by the exhaustion requirement, the Court must consider whether those claims have been procedurally defaulted. "The procedural default or 'independent and adequate state ground' doctrine precludes federal review of any state court decision that rests on a state law ground that is independent of the federal question and adequate to support the judgment, whether that state ground is procedural or substantive." *Watson v. Armstrong*, No. 3:00CV1380, 2005 WL 2452569, at *6 (D.Conn. Sept.30, 2005) (citing *Cox v. Miller*, 296 F.3d 89, 100 (2d Cir.2002) (further citation omitted)).

■ As noted above, the State Court denied Scales's Article 78 petition based on

---

with Scales's statement in his federal habeas Petition that he "sought relief in the form of State Habeas Corpus, in more than one court, all the way to the N.Y.S. Appellate Division 3rd Dep[artmen]t ... and even filed ... Article 78 Proceedings in Albany county Supreme Court, and each time was denied, and even attempted to enter into the Court of Appeals, but was denied entry based on improper use of forms." (Pet.¶ 24.)

5. As previously noted, the Court's independent review of the records of the Appellate Division, Third Department indicate that Scales did not appeal the denial of his Article 78 Petition. Pursuant to the Federal Rules of Evidence, courts may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within

the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). "The actions of other courts and documents filed in other courts' records may ... be judicially noticed when relevant ... to establish the fact of the litigation and actions of that court." Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 2012 (2d ed.2005); *but see McCormick on Evidence* § 330 (John W. Strong ed., 5th ed. 1999) ("Matters of record in other courts are usually denied notice even though it would appear manifest that these public documents are logically subject to judicial notice as readily verifiable facts.").

its determination that Scales failed to comply with the statute of limitations for Article 78 proceedings. That limitation period, specified at C.P.L.R. § 217, and the law governing its application, are wholly independent of federal law. Therefore, the state procedural bar to Scales's Article 78 petition was "independent" for purposes of the procedural default doctrine.

■ It is more complicated to determine whether the state procedural bar to Scales's exhaustion of his state court remedies was adequate to support the State Court's judgment for purposes of procedural default. "[A] federal court's 'responsibility to ensure that the state rule is 'adequate' obligates [this court] to examine the basis for and application of state law.' The Second Circuit has explained that a state court's finding of procedural default constitutes an 'adequate' ground only 'if there is a fair and substantial basis in state law for the state court's determination.'" *Bell v. Poole,* No. 00 CV 5214, 2003 WL 21244625, at *9 (E.D.N.Y. April 10, 2003) (quoting *Garcia v. Lewis,* 188 F.3d 71, 77–78 (2d Cir.1999)). A state procedural rule does not have a fair and substantial basis in state law unless it is "'strictly or regularly followed.'" *Id.* (quoting *Wedra v. Lefevre,* 988 F.2d 334, 339 (2d Cir.1993)). In addition, "the adequacy of a state procedural bar is determined with reference to the 'particular application' of the rule; it is not enough that the rule 'generally serves a legitimate state interest.'" *Cotto,* 331 F.3d at 240 (quoting *Lee v. Kemna,* 534 U.S. 362, 387, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).

The state procedural rule at issue in Scales's case is the statute of limitations for Article 78 proceedings. An Article 78 proceeding against a public body or officer "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner." C.P.L.R. § 217(1) (McKinney 2005). This limitation period has a fair and substantial basis in state law in that it is clearly codified in the C.P.L.R. and is not "novel and unforeseeable." *Spears v. Spitzer,* No. 02–CV–2301, 2005 WL 588238, at *7 (E.D.N.Y. March 14, 2005) (citing *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 457, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)). In addition, New York courts routinely apply the Article 78 limitation period even in cases filed by *pro se* prisoners. *See, e.g., Grant v. Senkowski,* 95 N.Y.2d 605, 721 N.Y.S.2d 597, 744 N.E.2d 132 (2001).

New York state case law does not, however, clearly support the manner in which the State Court applied the statute of limitations to Scales's Article 78 petition. The State Court calculated the limitation period based on the time that had elapsed between the date the Appeals Unit mailed its decision to Scales and the date Scales's petition was filed with the State Court. While it is well established that the limitation period stops running at the time of filing,[6] New York courts have issued inconsistent rulings regarding when the limitation period begins to run. The State Court in Scales's case based its method of calculating the limitation period on *Carter v. New York State Div. of Parole,* 95

---

6. *See Grant,* 721 N.Y.S.2d 597, 744 N.E.2d at 133 ("Under this State's commencement-by-filing system, an article 78 proceeding is 'commenced by filing a notice of petition or order to show cause and a petition.' Claims asserted in such proceedings are deemed 'interposed' for Statute of Limitations purposes at the time of filing.") (quoting C.P.L.R. § 304

(McKinney 2005); citing C.P.L.R. § 203(c) (McKinney 2005)). *Grant* rejected the proposition that, in cases involving *pro se* prisoners, an Article 78 action should be deemed interposed when the petitioner delivers legal papers to prison authorities for mailing to the appropriate court. *See id.* at 134.

N.Y.2d 267, 716 N.Y.S.2d 364, 739 N.E.2d 730 (2000), in which the New York Court of Appeals upheld a lower court's calculation of the Article 78 limitation period from the date when "the appeals unit decision was mailed to petitioner." *Id.* at 732.

This method for calculating the limitation period, however, conflicts with an earlier Court of Appeals precedent as well as lower court cases decided after *Carter.* In *Biondo v. New York State Board of Parole,* 60 N.Y.2d 832, 470 N.Y.S.2d 130, 458 N.E.2d 371 (N.Y.1983), which the *Carter* court cited, but did not discuss or explicitly overrule, the Court of Appeals rejected a lower court holding that "the running of the statutory period beg[ins] to run immediately upon the issuance of the determination" being challenged. *Biondo,* 470 N.Y.S.2d 130, 458 N.E.2d at 371. The *Biondo* court held instead that "[t]he four-month Statute of Limitations did not begin to run until the petitioner received notice of the appeal board's determination." *Id.* In addition, even after *Carter,* lower New York courts continue to calculate the Article 78 limitation period from the date the petitioner receives notice of the decision to be challenged. *See, e.g., Blanche v. State,* 17 A.D.3d 1069, 794 N.Y.S.2d 235, 236 (4th Dept.2005); *Saferstein v. Lawyer's Fund for Client Protection,* 298 A.D.2d 726, 748 N.Y.S.2d 438, 439 (3 Dept.2002); *Ousmane v. City of New York,* 2005 WL 1004738, at *12 (N.Y.2005); *Robinson v. Finkel,* 194

Misc.2d 55, 748 N.Y.S.2d 448, 455 (N.Y.Sup.Ct.2002). Respondents do not address this inconsistency in New York case law, nor do they provide any support for their assertion that the State Court's decision was based on a firmly established rule.

According to the State Court's calculation of the limitation period, Scales missed the statutory filing period by at least nine days.[7] Thus, if nine days or more passed between the date the Appeals Unit decision was mailed and the date Scales received it, and if the State Court had applied the limitation period to begin to run on the latter date, Scales's Article 78 petition would not have been time-barred. Scales, however, though he specifically contests the State Court's calculation of the limitation period from the date the Appeals Unit decision was mailed to him, (*see* Traverse at 10), has not stated when he received the Appeals Unit decision, nor does any evidence in the record before the Court provide this information. Thus, it is unclear whether, had the State Court calculated the limitation period from the receipt date, Scales's petition nevertheless would have been time-barred.

 The Court, however, need not further consider whether Scales's claims should be deemed procedurally defaulted because it nonetheless finds that they should be dismissed on the merits.[8]

---

**7.** Justice Stein's Decision and Order denying Scales's Article 78 petition states that he filed his petition on "January 15, 2003, at the earliest." (Decision and Order dated September 15, 2003 (attached as Ex. G to Morgan Decl.) at 2.) Although the Decision and Order does not explain the basis for Justice Stein's apparent view that the petition might have been filed later than this date, it seems likely that this view was based on the fact that different documents submitted in support of Scales's Article 78 petition bear different date stamps. While the Order to Show Cause appears to be stamped January 18, 2003, the

Affidavit in Support of the Order to Show Cause and the Verified Petition appear to be stamped January 15, 2003. (*See* Ex. F to Morgan Decl.)

**8.** The Second Circuit has noted that "[i]t is well-settled that the doctrine of procedural default is prudential rather than jurisdictional in nature." *Kuhali v. Reno,* 266 F.3d 93, 101 (2d Cir.2001) (citing *Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 170 (2d Cir.2000)).

## C. *MERITS*

■ The Supreme Court has held, and Respondents do not contest, that "the liberty of a parolee ... must be seen as within the protection of the Fourteenth Amendment." *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Scales argues that his right to due process was violated because his guilty plea "was entered based upon a mutual agreement between the petitioner and members of the Division of Parole" and that agreement "was reneged on by the Division of [P]arole." (Pet.¶ 9.) Scales claims that he "was promised 8 months time served revoke and restore to parole for [his] co-operation with [G]ang Intelligence." (Pet.¶ 10.) Therefore, according to Scales, when Judge Meringolo's recommendation that his parole be revoked and restored "was modified to a three year hit by the division of parole ... without prior warning or the chance to retract his plea as required by law, ... his right to procedural due process" was violated. (Pet. ¶ 10.)

Respondents argue that this claim is "mistaken because [Scales] received the benefit of the bargain—dismissal of the remaining charges of parole violation and Judge Meringolo's *recommendation* to the Parole Board that petitioner's parole be revoked and restored." (Resp.'s Mem. at 11 (emphasis in original).) Scales claims, though, that he was not adequately informed that his plea agreement did not guarantee that his parole would be restored. Rather, he asserts that "at no point or time, was he ever advised by either the [parole] specialist, or the hearing Judge ... of there being a potential chance that his sentence would be modified or that other commissioners would have any imput [sic] or say in the determination of the process and thus petitioner was not inclined to believe anything other than that

he would be released...." (Petr.'s Mem. at 9.)

■ For a guilty plea to a criminal charge to be constitutionally valid, "it must represent 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Nunez v. Costello,* No. 93 CIV. 5282, 1994 WL 719686, at *2 (S.D.N.Y. Dec.28, 1994) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970);) (citing *Boykin v. Alabama,* 395 U.S. 238, 245, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). "In order to determine whether or not a plea was voluntary, the court must consider 'whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea.'" *Id.* (quoting *Williams v. Smith,* 591 F.2d 169, 172 (2d Cir.1979); citing *Caputo v. Henderson,* 541 F.2d 979, 984 (2d Cir.1976), and *Kelleher v. Henderson,* 531 F.2d 78, 81–82 (2d Cir. 1976)). Assuming for purposes of the instant case that the same principles apply to guilty pleas to parole violation charges, the Court finds that Scales's claim has no merit.

The evidence that Scales cites in support of his claim that the Division of Parole promised that he would be restored to parole upon pleading guilty suggests at best that Scales, though represented by counsel, may have misunderstood the terms of the plea agreement, rather than that the Division of Parole engaged in any misconduct or bad faith in misrepresenting those terms. In his reply to Respondents' opposition papers, Scales quotes Judge Meringolo's statement at the Revocation Hearing that he was "going to recommend a revoke and restore to parole." (Traverse at 7.) Although Scales cites this statement in support of his claim, Judge Meringolo's use of the word "recommend"

makes clear that he was not issuing a final sentence. At the end of the Revocation Hearing, Judge Meringolo reiterated that he was "recommending and [would] go along with the recommendation of revoke and restore, time served." (Tr. at 7.) In addition, the Parole Revocation Specialist present at the Hearing advised Scales on the record: *"If* the revoke and restore goes through and you're released, you should report immediately to Parole Officer Roach," (Tr. at 7) (emphasis added), again signaling the contingency implicit in Scales's negotiated sentence.

Scales also cites in support of his Petition the administrative appeal prepared by the attorney who represented him in the parole proceedings, Linda Falcone Colisanto ("Colisanto"). Scales states that, in the appeal submission, "the issues and facts are laid out in plain, concise, intelligible terms, leaving absolutely no doubt or room to question whether or not such a deal was made or why," presumably referring to his plea agreement with the Division of Parole. Colisanto's appeal submission, however, consistently and repeatedly construes Judge Meringolo's sentencing determination as a "recommendation." In fact, Colisanto emphasized in the appeal papers that Commissioner Dennison, who modified Judge Meringolo's recommendation, modifies the recommendations of Administrative Law Judges "on a regular basis," (Administrative Appeal on Behalf of Anthony Scales dated Nov. 7, 2001 ("Admin.Appeal") (attached as Ex. D to Morgan Decl.) at 6), thus indicating the absence of any reasonable basis on which Colisanto could have expected that Judge Meringolo had the final word in sentencing Scales. Nowhere in the appeal submission does Colisanto represent that the Division of Parole failed to comply with its obligations under the plea agreement or that the agreement was intended to guarantee Scales's release.

Accordingly, as indicated above, Scales's reliance on Judge Meringolo's statements during the Revocation Hearing, read in the context of Colisanto's representations in her appeal submission, suggests that the crux of Scales's Petition is his assertion now that he did not understand that the terms of his plea agreement were subject to an additional procedural step before this sentence would become final. There is no indication or charge that those terms were affirmatively misrepresented to him.

■■■■■ "[W]here a habeas corpus petitioner seeks relief from a plea on the ground that he subjectively misunderstood the consequences of his choice, he must provide 'substantial objective proof' showing the misunderstanding was 'reasonably justified.'" *Gonzalez v. Green Haven Correctional Facility*, No. 85 Civ. 3775, 1986 WL 1194, at *4 (S.D.N.Y. Jan.17, 1986) (quoting *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir.1972); citing *United States ex rel. La Fay v. Fritz*, 455 F.2d 297, 303 (2d Cir.1972), and *United States ex rel. Johnson v. Mancusi*, 401 F.Supp. 531, 536–37 (S.D.N.Y.1975)). "Although a claim frequently asserted [by habeas petitioners] is that the guilty plea was entered by the prisoner in the erroneous belief, induced by discussions with his lawyer, that he would receive a lesser sentence than that ultimately imposed or that he would be permitted to withdraw his guilty plea, this has repeatedly been held insufficient to warrant the issuance of a writ." *Curtis,* 466 F.2d at 1098 (citing *Fritz*, 455 F.2d at 303; *Mancusi*, 401 F.Supp. at 536–37; *United States ex rel. Callahan v. Follette,* 418 F.2d 903 (2d Cir. 1969); *United States ex rel. Bullock v. Warden*, 408 F.2d 1326, 1330 (2d Cir. 1969)). When a habeas petitioner asserts that a plea was based on such a misunderstanding, "[t]o justify the issuance of a

federal writ vacating his guilty plea, the petitioner must bear the burden of showing that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justified his mistaken impression." *Id.*

Scales has not met this burden. Although the record of the Revocation Hearing indicates that neither Judge Meringolo nor the Parole Revocation Specialist explicitly stated that the sentencing recommendation might be modified, the Court finds that it is sufficiently evident from the plain meaning of the word "recommend" that the recommended sentence was not final. In addition, Judge Meringolo specifically distinguished between making a recommendation and issuing a final sentence. At the beginning of the Revocation Hearing, he addressed Scales, informing him that if it was found that Scales had violated the terms of his release, he would "either make an appropriate recommendation to the Board or a final decision concerning what should be done with the unserved portion of [his] underlying sentence." (Tr. at 2.) Judge Meringolo then asked Scales: "Do you understand why you're here today?" (*Id.*) Scales responded affirmatively.

■ In addition, Scales was represented by counsel throughout the course of the plea negotiations and during the parole hearing. "Where a defendant is represented by counsel during the plea and enters a plea upon the advice of counsel, 'the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Although the record before the Court does not clearly reflect the extent to which Scales's guilty plea was

based on the advice of counsel, it does indicate that his attorney was an active participant in the plea negotiations. Colisanto, who represented Scales in his appeal of the parole revocation as well as at the Revocation Hearing itself, stated in her submission in support of the appeal that Scales's "plea negotiation involved hard work on the part of all parties involved and took approximately seven months to clear all the proper channels. This decision was worked upon by Administrate Law Judge Meringolo, Specialist Burgess, Regional Director Mr. Calli, Detective DiFiglia, Mr. Scales and counsel...." (Admin. Appeal at 6.) If there were any validity in Scales's contention that there was never any mention to him during such extensive plea negotiations that Judge Meringolo's recommendation did not constitute a final sentence and that Scales might not be restored to parole despite his agreement to plead guilty, then the adequacy of Colisanto's representation of Scales would be called into question. Scales, however, has not raised this issue. Nor is there on the record before the Court any manifest evidence that Colisanto's performance was deficient, demonstrating errors so serious and prejudicial to Scales as to fall below the requisite standards of effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Even if the Court were to accept as true Scales's claim that officials of the Parole Division represented to him that his guilty plea would guarantee his release from custody, the statements of Judge Meringolo and the Parole Revocation Specialist at the Revocation Hearing would render any reliance on such statements by Scales objectively unreasonable. Accordingly, the Court finds that Scales has not met his burden to demonstrate that "the circum-

stances as they existed at the time of the plea, judged by objective standards, reasonably justified his mistaken impression," *Curtis,* 466 F.2d at 1098 (citations omitted), that the Division of Parole had promised that he would be restored to parole.

Scales's remaining claims do not allege violations of the United States Constitution or federal law and thus do not warrant discussion in the instant review.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the petition of petitioner Anthony Scales ("Scales") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

Because Scales has failed to make a substantial showing of denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**