**Shon NORVILLE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**10–CR–1046 (VM)**
**14–CV–6347 (VM)**

United States District Court, S.D. New York.

Signed August 27, 2015

Filed 08/28/2015

For the reasons discussed below, the Court DENIES Norville's motion in its entirety.

## I. BACKGROUND [1]

From approximately 2008 until 2010, Norville, while employed as a longshoreman at the Port Newark Container Terminal ("Port") and in coordination with several other longshoremen, smuggled cocaine from Panama through the Port. In January 2010, law enforcement agents seized approximately 120 kilograms of cocaine that Norville and co-conspirators had concealed and shipped from Panama to the Port. Ayind Lewis ("Lewis"), one of the co-conspirators, served as Norville's driver and helped guard and distribute the narcotics that Norville smuggled through the Port. In October 2010, Norville and several co-conspirators were arrested while attempting to smuggle more cocaine through the Port. Two guns and hollow-point ammunition were recovered from Norville's home at the time of the arrest.

By superseding indictment (the "Indictment") filed on April 6, 2011 (Dkt. No. 67), the Government charged Norville with four criminal offenses: (a) conspiracy to distribute, and to possess with intent to distribute, five kilograms and more of cocaine, in violation of 21 U.S.C. Sections

Shon Norville, Fort Dix, NJ, pro se.

Howard Seth Master, U.S. Attorney's Office, New York, NY, for Respondent.

### DECISION AND ORDER

VICTOR MARRERO, United States District Judge

Petitioner Shon Norville ("Norville") brought this *pro se* motion pursuant to 28 U.S.C. Section 2255 ("Section 2255") to vacate, set aside, or otherwise correct his conviction and sentence. (Dkt. No. 220.) Norville is currently serving a sentence of 180 months imprisonment after pleading guilty to one count of conspiracy to distribute, and to possess with intent to distribute, 5 kilograms and more of cocaine, in violation of 21 U.S.C. Sections 812, 841(a)(1), 841(b)(1)(A), and 846. Norville claims he was denied of his Sixth Amendment right to the effective assistance of counsel, and requests that his current sentence be vacated or, alternatively, that his case be remanded for evidentiary hearings.

1. The Court derives the factual and procedural summary below from: (1) Pet. Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody, dated July 22, 2014 (Dkt. No. 200); (2) Petitioner's Br. in Supp. of His 28 U.S.C. Section 2255 Mot. ("Brief") (Dkt. No. 221 at 1–12); (3) Petitioner's Affidavit in Supp. of His 28 U.S.C. Section 2255 Mot. ("Affidavit") (Dkt. No. 221 at 13–14); (4) Government's Br. in Opp. To Petitioner's Section 2255 Mot., dated Dec. 9, 2014 ("Opp.") (Dkt. No. 207); (5) Decl. of Petitioner's Counsel, dated Dec. 5, 2014 ("Decl.") (Dkt. No. 208); (6) Government's *Pimentel* Letter Setting Forth Position Regarding Application of U.S. Sentencing Guidelines to Petitioner, dated Apr. 24, 2012

("*Pimentel* Letter") (Dkt. No. 208 Ex. A); (7) Petitioner's Presentence Investigation Report, dated Aug. 13, 2012 ("PSR") (on file with Chambers); (8) Tr. of Sentencing Proceeding, dated Oct. 5, 2012 ("Sentencing Tr.") (Dkt. No. 207 Ex. A); (9) Plea Agreement Bet. Petitioner and Government, dated May 16, 2012 ("Plea Agreement") (Dkt. No. 207 Ex. B); (10) Tr. of Plea Proceeding, dated May 18, 2012 ("Plea Tr.") (Dkt. No. 207 Ex. C); and (11) Petitioner's Reply to Government's Opp. To Petitioner's Section 2255 Mot., dated Dec. 23, 2014 ("Reply") (*Norville v. United States*, 14–CV–6347, Dkt. No. 7). Except where specifically referenced, no further citation to these sources will be made.

812, 841(a)(1), 841(b)(1)(A), and 846 ("Count One"); (b) conspiracy to import into the United States five kilograms and more of cocaine, in violation of 21 U.S.C. Sections 812, 952, 960(a)(1), 960(b)(1)(B), and 963 ("Count Two"); (c) conspiracy to break customs seals and remove goods from customs custody in violation of 18 U.S.C. Sections 549 and 371 ("Count Three"); and (d) using and carrying firearms and assorted ammunition during and in relation to, and possessing the firearms in furtherance of, the drug trafficking offenses in Counts One and Two, in violation of 18 U.S.C. Sections 924(c)(1)(A)(i) and 2 ("Count Four").

John Merlingo, Esq. was appointed as Norville's counsel pursuant to the provisions of the Criminal Justice Act and subsequently represented Norville at all proceedings related to this case. Merlingo requested, pursuant to the Second Circuit in *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir.1991), a letter ("*Pimentel* Letter") setting forth the Government's initial position regarding the application of the United States Sentencing Guidelines ("Sentencing Guidelines") to Norville's case. The *Pimentel* Letter assessed Norville's sentencing exposure as follows: were he to timely plead guilty, his sentencing range for Counts One through Four would be 295 months to 353 months imprisonment, with a mandatory minimum sentence of 180 months imprisonment. Conversely, were he to proceed to trial and be found guilty, or were he not otherwise entitled to credit for acceptance of responsibility, his sentencing range would be 384 to 465 months imprisonment.

Merlingo reviewed the contents of the *Pimentel* Letter with Norville, who informed Merlingo that he intended to plead guilty. Merlingo negotiated the Plea Agreement with the Government stipulat-

ing that Norville would plead guilty to Count One, a supervisory role enhancement under Section 3B1.1(b) of the Sentencing Guidelines, and a firearm possession enhancement under Section 2D1.1(b)(1) of the Sentencing Guidelines. The Government agreed in turn to dismiss Counts Two through Four and to seek a base offense level of 36 instead of a base offense level of 38. Merlingo advised Norville that the Plea Agreement was a favorable deal, and also informed him of his right to go to trial.

On May 18, 2012, Norville pleaded guilty before the Honorable Theodore Katz, United States Magistrate Judge, pursuant to the Plea Agreement. During the plea allocution, Judge Katz confirmed, among other things, that: (1) Norville had read and understood the form he signed consenting to enter his plea before a Magistrate Judge (Plea Tr. 3); (2) Norville was satisfied with his attorney (*id.* 5); (3) Norville had reviewed the Plea Agreement with his attorney and understood its contents (*id.* 8); (4) Norville had discussed the application of the Sentencing Guidelines to his case with his attorney (*id.* 9); and (5) Norville understood that the sentencing judge had the discretion to impose a more severe sentence than described in the Plea Agreement (*id.*).

This Court sentenced Norville on October 5, 2012. (Dkt. Minute Entry dated Oct. 5, 2012.) After confirming that the parties had reviewed the PSR and had no objections to it, the Court adopted the factual recitations in the PSR as well as its guidelines sentencing range calculation of 235 to 293 months. (Sentencing Tr. 17.) The Court then imposed a below guidelines sentence of 180 months imprisonment.

On July 22, 2014, Norville filed the in-

stant Section 2255 petition in this Court.[2] Norville asserts that he was denied his Sixth Amendment right to effective assistance of counsel insofar as Merlingo was ineffective by: (1) erroneously advising him to plead guilty pursuant to the Plea Agreement, specifically because it contained the firearms and supervisory role enhancements, which he now argues should not have applied to him; and (2) for failing to advise him that he could have challenged those enhancements at sentencing. The Government filed its Opposition on December 9, 2014. (Dkt. No. 207.) On December 23, 2014, Norville filed a Reply to the Government's Opposition to his Motion, further arguing that: (1) because he was unaware that by pleading guilty he would be admitting the conduct qualifying him for the sentencing enhancements, his guilty plea was constitutionally deficient; and (2) that a Federal Magistrate Judge had accepted the guilty plea, not a District Judge, in violation of the Constitution of the United States. (*Norville v. United States,* 14–CV–6347, Dkt. No. 7.)

## II. DISCUSSION

### A. APPLICABLE LEGAL STANDARDS

At the outset, the Court notes that Norville is a *pro se* litigant. As such, his submission must be held to "less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993) (internal citation omitted). The Court must construe Norville's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPher-*

son v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted). A *pro se* litigant, however, is not exempt "from compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole,* 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck,* 710 F.2d 90, 96 (2d Cir.1983)).

A person in federal custody may move to vacate, set aside, or correct his sentence if it was imposed in violation of "the Constitution or laws of the United States," or "the court was without jurisdiction to impose such sentence," or "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See Kimmelman v. Morrison,* 477 U.S. 365, 374–75, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001) ("Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation of counsel altogether and potentially violates the defendant's Sixth Amendment rights."). However, criminal defendants asserting ineffective assistance of counsel have a high threshold to meet "in order to deter a baseless attack on the performance of counsel in a last-ditch effort to avoid a conviction or reduce the sentence." *Percan v. United States,* 294 F.Supp.2d 505, 511 (S.D.N.Y.2003); *see also Kimmelman,* 477 U.S. at 382, 106 S.Ct. 2574.

---

**2.** Norville declared that he had timely filed a Section 2255 motion on September 18, 2013, but that his legal materials were lost by the Federal Bureau of Prisons. (Dkt. No. 200 at 13.) In view of the prison mailbox rule, Norville's abovementioned declaration, and his

conduct consistent with having attempted to file the motion, the Government decided not to interpose a statute of limitations defense to the instant Motion. As such, the timeliness of his motion will not be addressed.

To prove ineffective assistance of counsel, the petitioner must satisfy a two-prong test. First, he must show that "counsel's representation fell below an objective standard of reasonableness" according to "prevailing norms." *Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An attorney's performance is given a strong presumption of effectiveness, as courts recognize a "wide range of professional assistance." *Id.* at 689, 104 S.Ct. 2052. Where a defendant is arguing that "counsel has misled him as to the possible sentence which might result from a plea of guilty, the issue is whether the defendant was aware of actual sentencing possibilities." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir.2005) (*quoting Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992)). Furthermore, allegations a defendant makes in a Section 2255 petition "cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth." *United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir.2001) (per curiam); *see also United States v. Juncal*, 245 F.3d 166, 171 (2d Cir.2001).

Second, the petitioner must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94, 104 S.Ct. 2052. The standard of proof is less than a preponderance of the evidence. *See*

Soto–Beltran v. United States, 946 F.Supp.2d 312, 317 (S.D.N.Y.2013). However, "some objective evidence other than defendant's assertions [is required] to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir.2003). A petitioner who pleaded guilty can show a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted in going to trial." *United States v. Boyd*, 407 Fed. Appx. 559, 561 (2d Cir.2011) (*quoting Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)[3]).

In accordance with Norville's Plea Agreement, his plea included application of an enhancement in calculating his guidelines range for possession of a firearm. The Sentencing Guidelines provide for a two-level enhancement of the base offense level of a drug-related offense if a "dangerous weapon (including a firearm) was possessed." United States Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(b)(1). The application note states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1) cmt. n. 3; *see also United States v. Smith*, 215 F.3d 237, 241 (2d Cir.2000) ("[W]hen the weapon's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapons to the of-

**3.** The *Hill* Court further elucidated its view of the appropriate focus of this inquiry as follows: "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error

'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial." *Hill*, 474 U.S. at 59, 106 S.Ct. 366.

fense conduct." (*quoting United States .v. McDonald*, 121 F.3d 7, 10 (1st Cir.1997)).

Norville also agreed to the application of a role enhancement in calculating his guidelines range. The Sentencing Guidelines provide for a three-level enhancement in the base offense level if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). A defendant is considered a manager or supervisor if he "exercise[d] some degree of control over others involved in the commission of the offense . . . or play[ed] a significant role in the decision to recruit or to supervise lower-level participants." *United. States v. Blount*, 291 F.3d 201, 217 (2d Cir.2002) (alterations in original) (*quoting Ellerby v. United States*, 187 F.3d 257, 259 (2d Cir. 1998)). It is enough for the defendant to manage or supervise a single other-participant, so long. as the criminal activity involved five or more participants. *See United States v. Payne*, 63 F.3d 1200, 1212 (2d Cir.1995).

### B.. APPLICATION

#### 1. Ineffective Assistance of Counsel Claim

Norville argues that Merlingo provided ineffective assistance of counsel because: (1) he advised Norville to plead guilty to a plea agreement that contained a firearms enhancement under Section 2D1.1(b)(1) and a supervisory enhancement under Section 3B1.1(b); and (2) he erroneously informed Norville that he could not contest the firearms and supervisory enhancements. Norville claims this advice was erroneous because the enhancements should not have been applied to him and "a defendant has a right to file objections to any information contained in the presentence report." (*Id.*)

To begin with, while Norville is correct in stating that a defendant has a right to file objections to information in the presentence report, the same is not true for information in plea agreements. Norville, in pleading guilty, agreed not to "seek any departure or adjustment pursuant to the Guidelines that is not set forth" in the Plea Agreement. (Plea Agreement 3.) If he had challenged the two enhancements—which were contained in the Plea Agreement—he would have violated his Plea Agreement. In that sense, Merlingo was correct in telling Norville he could no longer contest the enhancements. Since Merlingo's advice on this point was accurate, giving that advice cannot be evidence of ineffective assistance.

Norville argues that he did not understand the Plea Agreement and would not have pleaded guilty to the enhancements if he had understood, but Norville testified at his plea hearing that he had read and understood the terms of the Plea Agreement (Plea Tr. 8), and that the Plea Agreement stipulates to conduct justifying the application of both enhancements (Plea Agreement 2). His allegations in his Motion "cannot overcome his contrary statements under oath during [his] plea allocution, which must be given presumptive force of truth." *Hernandez*, 242 F.3d at 112–13.

Norville's ineffective assistance claim, then, relies solely on whether Merlingo's negotiation of the Plea Agreement and advice to plead guilty pursuant to the Plea Agreement constitutes ineffective assistance. The Court notes that Merlingo requested and received a *Pimentel* letter, and in negotiating the Plea Agreement, Merlingo successfully lowered the mandatory minimum sentence and the Sentencing Guidelines range Norville would face as compared to if he had pled guilty with-

out the benefit of the plea agreement or proceeded to trial.[4] As a condition to the more lenient sentencing requirements, the Government insisted on the application of the supervisory role and firearms enhancements. (Merlingo Decl. 3.) The Government has further stated they would not have agreed to any plea that did not include those enhancements, since the enhancements in essence replaced—to a lesser extent—the Counts that the Government was dismissing as part of the Plea Agreement. The record shows that Norville was fully informed by Merlingo on the conditions of the Plea Agreement. (*Id.*) Although Merlingo believed that it would be extremely difficult to contest the enhancements and, given the strength of the wiretap evidence against Norville, advised Norville to plead guilty, Merlingo also advised Norville of his right to go to trial. (*Id.*) Norville had also testified before Magistrate Judge Theodore Katz at the plea proceeding that he was satisfied with Merlingo's representation, that he had read and understood the Plea Agreement, discussed its implications with Merlingo, and that he agreed to be bound by it. (*See* Plea Tr.)

Finally, even if admission to the enhancements were not a condition of the favorable Plea Agreement negotiated on Norville's behalf, there is no indication that Merlingo's advice regarding the legal strength of the Government's position regarding these enhancements "arose from oversight, carelessness, ineptitude, or laziness." *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir.2003). The merits of the challenges to the enhancements, if raised at trial by Merlingo, are doubtful. With re-

gard to the application of the firearms enhancement, Norville does not provide any explanation as to how he would have overcome the presumption that the enhancement applied, as the comments to the Sentencing Guidelines state the enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1) cmt. n. 3. Norville proposes that the firearms discovered in his home are analogous to the example of an unloaded hunting rifle discovered in a defendant's residence, which was used in the Sentencing Guidelines application notes as an example of a scenario where the enhancement would not apply. Norville argues that in this example, as in his case, there is no evidence to suggest the gun is in any way connected to the criminal activity and therefore the enhancement was incorrectly applied to him. The record shows, however, that Norville possessed firearms and hollow-point ammunition in his home while coordinating an international drug trafficking conspiracy, and wiretap conversations revealed that he frequently discussed these firearms in the context of planning and making arrangements for the conspiracy. The hunting rifle example of a gun entirely unrelated to the criminal activity simply does not apply to Norville's case, and the presumption that the enhancement applies would almost certainly carry.

With regard to the application of the supervisory role enhancement, Norville argues it should not have applied to him because his involvement in the conspiracy does not meet all of the seven factors

---

4. If Norville decided to contest the charges and proceed to trial, he would face the possibility of a 15–year mandatory minimum sentence and an applicable Sentencing Guidelines range of 384 to 465 months' imprisonment upon conviction. If Norville pleaded guilty without the benefit of the plea agreement, he would also be exposed to a 15–year mandatory minimum sentence and an applicable Sentencing Guidelines range of 295 to 353 months imprisonment.

enumerated by the Sentencing Commission in Application Note 4 of the Commentary to Section 3B1.1.[5] However, these factors are only used in distinguishing a leadership and organizational role (U.S.S.G. Section 3B1.1(a), warranting an increase of 4 levels), from one of mere management or supervision (U.S.S.G. Section 3B1.1(b), warranting an increase of 3 levels). These factors are not used in determining whether the enhancement applies at all. U.S.S.G. § 3B1.1, cmt. n. 4. A defendant is considered a manager or supervisor if he "exercise[d] some degree of control over others involved in the commission of the offense ... or play[ed] a significant role in the decision to recruit or to supervise lower-level participants." *Blount*, 291 F.3d at 217. Norville's conversations with others to arrange for and coordinate the narcotics shipments, the recovery of those shipments from secure areas with the Port, and his supervision of participants such as Lewis and the other longshoremen, provide clear evidence of a supervisory role within the narcotics trafficking scheme.

An attorney's performance is given a strong presumption of effectiveness, as courts recognize a "wide range of professional assistance." *Id.* at 689, 104 S.Ct. 2052. Merlingo successfully negotiated the Plea Agreement, which resulted in dismissed Counts, a lower mandatory minimum sentence, and a lower applicable sentencing range. Merlingo advised Norville of his right to go to trial and also advised him to take the deal on the table because he would otherwise likely lose and face a more significant sentence. There is no evidence to suggest Merlingo's advice was inaccurate, and certainly not enough to suggest it rose to the level of "ineffective."

The Court therefore rejects Norville's claim that he was denied the effective assistance of counsel.

### 2. *Guilty Plea Not Intelligent or Voluntary*

In the alternative, Norville asserts that even if it were the case that the two enhancements could not be challenged in court, he was under the mistaken impression that they could be challenged. He argues that his guilty plea was not intelligent or voluntary and therefore did not satisfy constitutional due process requirements.

 "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' " *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (*quoting Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). A plea is voluntary if it is entered by an individual "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," unless "induced by threats," "misrepresentation" ... or perhaps by promises that are by their nature improper." *Id.* at 619, 118 S.Ct. 1604 (alteration in original) (internal citation omitted).

 A defendant's erroneous, subjective ideas, produced by conversations with his counsel, "in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside

---

5. The factors are: (1) The exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (vii) the degree of control and authority exercised over others.

his guilty plea." *United States ex rel. Curtis v. Zelker,* 466 F.2d 1092, 1098 (2d Cir.1972) (*citing United States ex rel. La-Fay v. Fritz,* 455 F.2d 297 (2d.Cir.1972)). Although prisoners frequently claim that their guilty pleas were based on misunderstandings "induced by discussions with [their] lawyers ... this has repeatedly been held insufficient to warrant the issuance of a writ." *Id.* "When a habeas petitioner asserts that a plea was based on such a misunderstanding, '[t]o justify the issuance of a federal writ vacating his guilty plea, the petitioner must bear the burden of showing that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justified his mistaken impression.'" *Scales v. N.Y. State Division of Parole,* 396 F.Supp.2d 423, 433–34 (S.D.N.Y.2005) (*quoting Curtis,* 466 F.2d at 1098) (alteration in original) (some internal quotation marks omitted).

Norville asserts that he construed certain sections of the Plea Agreement to mean that he was free to object to the enhancements at sentencing, and absent Merlingo's advice to the contrary, this impression was a reasonable one when examining solely the statements in the Plea Agreement to which Norville points, (i.e., "nothing in this Agreement limits the right of parties [ ] to present the Probation Office or the Court any facts relevant to sentencing," "[i]t is understood ... neither the Probation Office nor the Court is bound by the above Guidelines ...," "the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same." (Plea Agreement 4.)) A lay person could reasonably believe from these lines of the Plea Agreement that the enhancements could be challenged at sentencing.

However, Norville's impression, as derived from these carefully-excerpted statements, is not reasonably justified in light of the Plea Agreement in its entirety. Although the Probation Office in its assessment and the Court in its sentencing discretion are not bound by the Guidelines stipulated in the Plea Agreement, this does not also mean that Norville is free to raise objections to the stipulation at sentencing. The Plea Agreement plainly states that "neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein ... [n]or will either party suggest that the Probation Office consider such a departure or adjustment under the Guidelines, or suggest that the Court *sua sponte* consider any such departure or adjustment." (Plea Agreement 3.) Furthermore, the right that the parties reserved to "answer any inquiries and to make all appropriate arguments concerning the same" applies only "[i]n the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated [in the Plea Agreement]." (*Id.*) An objective analysis of the Plea Agreement demonstrates that Norville's belief was not reasonably justified, and he has not provided sufficient evidence to overcome his burden of showing that "circumstances as they existed at the time of the plea, judged by objective standards, reasonably justified his mistaken impression." *Scales,* 396 F.Supp.2d at 434.

Furthermore, there is reason to question the genuineness of even Norville's claimed subjective belief that the enhancements could be challenged at sentencing. Merlingo testified that he reviewed the Plea Agreement with Norville and in his opinion, "Norville was competent during the entire plea process and understood the terms of the plea, including the fact that he could not challenge the enhancements." (Decl. 3.) Judge Katz confirmed that Norville had reviewed the Plea Agreement

with Merlingo and that Norville understood its contents. (*See* Plea Tr.) Regardless, Norville has not met his burden of proof and the Court rejects his argument that his plea was not knowing and voluntary.

### 3. *Federal Magistrate Judge's Acceptance of Norville's Guilty Plea*

Norville also asserts that Judge Katz accepted his guilty plea in violation of the Federal Magistrates Act, 28 U.S.C. Section 636 ("Magistrates Act"). The Magistrates Act lists three types of duties for magistrate judges: (1) certain enumerated duties that can be undertaken without the parties' consent under 28 U.S.C. Sections 636(a)(4) and (b)(1)(A); (2) certain enumerated duties that can only be undertaken with parties' consent under 28 U.S.C. Section 636(a)(3) and 18 U.S.C. Section 3401(b); and (3) "such additional duties as are not inconsistent with the Constitution and laws of the United States" under 28 U.S.C. Section 636(b)(3). Norville relies on *United States v. Harden*, 758 F.3d 886 (7th Cir.2014), where the Seventh Circuit held that the acceptance of a guilty plea in a felony case, even with the parties' consent, is "too important" a task to fall within the duties delegated to magistrate judges under the "additional duties" clause of the Magistrates Act.

■ However, the reasoning and final pronouncement of the Seventh Circuit is in direct conflict with established Second Circuit precedent, which has long upheld the practice of district court referrals of Rule 11 allocutions to magistrate judges as an "additional duty" consistent with 28 U.S.C. Section 636(b)(3) and Article III. *United States v. Williams*, 23 F.3d 629, 634 (2d Cir.1994). The Second Circuit has held this practice constitutional as long as the defendant consents. *See id.* ("A defendant's consent ... is the crucial difference in the constitutional analysis, because a defendant may waive even his most basic rights."). In rejecting the argument that, even with the defendant's consent, this practice violates Article III, the *Williams* court stated that "because the district court remains in control of the proceeding, and the matter is reported to that court for its approval, there should be no concern that the use of a magistrate judge to allocate a defendant accused of a felony will tend to devitalize Article III courts." *Id.*

Since Norville waived his right to proceed before an Article III judge and consented to proceedings before a magistrate judge, this claim is meritless.

### III. *PETITIONER'S REQUEST FOR A HEARING*

■ Norville requests an evidentiary hearing under Section 2255 to resolve factual issues related to sentencing. The Court denies that request. Section 2255 requires a "prompt hearing" on the movant's claims, except where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." 28 U.S.C. § 2255. Norville has not sufficiently demonstrated that he has any plausible claim, and his allegations of ineffective assistance are contradicted by both the record in the underlying proceeding as well as Merlingo's sworn declaration. The Motion and the files and records related to the instant action therefore conclusively show that Norville is entitled to no relief, and an evidentiary hearing is not warranted.

### IV. *Order*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 200) of petitioner Shon Norville ("Nor-

ville") to vacate, set aside, or otherwise correct his conviction and sentence pursuant to 28 U.S.C. Section 2255 is **DENIED**.

The Court certifies, pursuant to 28 U.S.C. Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

As Norville has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. Section 2253(c)(1)(B).

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**